IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RADHA SINGH,                          :
                                      :
            Plaintiff,                :
                                      :        CIVIL ACTION
      v.                              :
                                      :        NO. 10-2028
SCHOOL DISTRICT OF                    :
PHILADELPHIA, et al.,                 :
                                      :
            Defendants.               :

## OPINION

Slomsky, J.                                        August 11, 2010

## I.    INTRODUCTION

On May 4, 2010, Plaintiff Radha Singh ("Singh") commenced this action under 42 U.S.C.

§ 1983 by filing a civil complaint against the School District of Philadelphia, Debra Carrera, Deana

Ramsey, Jose LeBron, Gregory Shannon, Victoria Pressley, Arlene Ackerman and Robert Archie

(collectively "Defendants").  Singh alleges violations of his First Amendment and procedural due

process rights and breach of contractual obligations by Defendants.  Singh is a school teacher.

Defendants are Singh's former employer and various school district administrators.

On May 13, 2010, Singh filed a Motion for Permanent and/or Preliminary Injunction (Doc.

No. 2).  On May 28, 2010, Defendants filed a Response in Opposition to Singh's Motion for

Permanent and/or Preliminary Injunction (Doc. No. 13).  On July 9, 2010, the Court held a hearing

on Singh's Motion.  After considering the testimony and exhibits offered by the parties at the hearing

and their filings in this case, the Court will deny the Motion for Permanent and/or Preliminary

Injunction.

1

## II.    FINDINGS OF FACT

Plaintiff Singh is a tenured teacher and a coordinator of the English for Speakers of Other Languages ("ESOL") program.  (Testimony of Radha Singh ["Singh"], Transcript of Hearing, July 9, 2010 ["Tr."], at 48:1-2; 148:14-17).  He is a member of the Philadelphia Federation of Teachers and is subject to the provisions of the collective bargaining agreement ("CBA").  (*Id.* at 136:23-137:10; Plaintiff's Complaint Exhibit F.)  Defendants are the School District of Philadelphia ("District"), which recently terminated Singh, and various District administrators.  (Pl. Comp. ¶¶ 2-9.)

Kensington Creative and Performing Arts High School ("Kensington CAPA"), a District high school, hired Singh in September 2009.  He was first employed as an ESOL teacher and was soon given the additional position of ESOL program coordinator; however, the District removed him from these positions in January 2010.  Defendants cite three incidents of corporal punishment and one incident of disrespectful behavior towards school administrators as just cause for Singh's termination.  Conversely, Singh alleges that his termination stems from his several complaints that the Kensington CAPA ESOL program was not in compliance with federal regulations.  At the hearing held on July 9, 2010, Plaintiff testified on his own behalf and called Defendants Arlene Ackerman, District Superintendent, and Debra Carrera, principal of Kensington CAPA, as adverse witnesses.  Defendants presented testimony from Jose LeBron, interim principal of Kensington CAPA, and Linda Brown, a District labor relations assistant.  Witness testimonies are summarized below.

2

1.    *Testimony of Radha Singh*

Radha Singh is a tenured teacher with the District.  (Singh, Tr., at 41:19-20.)  Prior to teaching in the District, Singh worked as an ESOL program director at Drexel University and grants manager with the District.  (*Id.* at 42:11-12; 46:6-7.)  From these positions, Singh developed specialized knowledge of federal ESOL regulations and laws, including the Y.S. Stipulation,[1] a federal order delineating certain requirements for ESOL programs.  (*Id.* at 46:1-19.)  As an ESOL teacher, the District also required Singh to follow the English Language Learners Education Program Handbook ("ELL Handbook"), which mandates ESOL teachers to support the implementation of school ESOL programs, provide adequate instruction to students, perform assessments, and utilize data.  (*Id.* at 89:15-90:1; Plaintiff's Hearing Exhibit 2.)

Beginning in September 2009, Singh was employed at Kensington CAPA as an ESOL teacher.  (*Id.* at 48:1-2; 148:14-17.)  Singh testified that two weeks after he started this position, he realized that the Kensington CAPA ESOL program was not in compliance with federal law.  (*Id.* at 50:3-8.)  Shortly thereafter, he notified Defendant Debra Carrera ("Carrera") through email and in person that the program was in "complete disarray" and that there were inadequate textbooks for ESOL students.  (*Id.* at 50:8; 53:23–54:4; 98:20.)  Singh's complaints encompassed allegations that there were insufficient records of student assessments and rosters, including records of each student's English learning level and progress and improper communication with parents.  (*Id.* at 50:23-51:3.)

_____

[1]On February 18, 2009, a consent decree was entered in <u>Y.S. v. Sch. Dist. of Phila.</u>, Civil Action No. 85-6924 (E.D. Pa. 1986) (Doc. No. 2.).  The consent decree is known as the "Y.S. Stipulation."  The Y.S. Stipulation requires that the District meet certain program standards for ESOL students, including maintaining records of student performance, evaluating ESOL programs and making appropriate changes to ensure their effectiveness, providing the parents of ESOL students of program standards in their native language, and reporting the District's ESOL program findings to the public.

In October 2009, Carrera left Kensington CAPA on maternity leave. At that point, Singh contacted interim principal, Defendant Jose LeBron ("LeBron"), about the inadequacies of the ESOL program. (*Id.* at 58:19-59:10; Pl. Hr. Ex. 9.)

Singh testified that soon after he expressed his initial complaints regarding the Kensington CAPA ESOL program, he was named the ESOL program coordinator. (Singh, Tr., at 148:14-15.) Carrera afforded Singh the fourth period off each school day to work on the ESOL program and to ensure that it was in compliance with federal regulations. (*Id.* at 149:1-4; 149:23-150:1.) Singh testified that LeBron encouraged Singh's work on the ESOL program and never asked Singh to stop commenting and asking questions about it. (*Id.* at 134:18-135:7.)

In the 2009-2010 school year, Singh was disciplined four times for showing disrespect to school administrators and inflicting corporal punishment on his students. The first incident occurred on October 26, 2009. On that date, Singh placed his hands on a student's head, causing her head to turn. (*Id.* at 62:16-20). Singh testified that immediately following this incident, Carrera did not ask for his side of the story. Singh admitted that he was afforded notice and an investigatory hearing regarding this incident. (*Id.* at 63:5-8; 137:14-16.)

The second incident leading to disciplinary action took place on December 17, 2009, when Singh raised his voice to a school administrator and slammed his classroom door on her. (*Id.* at 103:11-14). Following this incident, Singh received notice of an investigative hearing and responded to the accusations at an investigative hearing while accompanied by his union representative. (*Id.* at 104:12-17.) He later responded to the accusations at a higher level hearing and was suspended for two days. (*Id.* at 107:10-23; Pl. Hr. Ex. 7.)

Also on December 17, 2009, another student complained that Singh hit him on the head. (*Id.* at 108:11.) Again, Singh was afforded notice of an investigative hearing, which was held with his union representative present. (*Id.* at 107:17-19; 109:8-12.)

The fourth and final incident occurred on January 29, 2010, when another student accused Singh of grabbing her arm while she was throwing a potato chip bag. (*Id.* at 122:23-25.) Singh testified that he grabbed the bag itself and not the student. (*Id.* at 68:7-9.) However, photographs of the student's arm revealed scratches and red marks. (*Id.* at 123:6-10.) Again, Singh was afforded notice of an investigatory conference and the investigatory conference was held with his union representative present. (*Id.* at 125:8-17.) Singh testified that at that conference he was able to discuss certain aspects of the incident, but he was not satisfied because he could not go into more detail about what transpired. (*Id.* at 127:5-7.)

Singh was also afforded a higher level conference where he again explained his version of the events. At this higher level conference, Singh was afforded the opportunity to question a student witness. (*Id.* at 128:16-24.) Following this episode involving the potato chip bag, Singh testified that he was immediately removed from his classroom. (*Id.* at 43:23-25.) After this removal on January 29, 2010, Singh was sent to the District regional office and reported there every school day until March 19, 2010, when he was terminated as a District employee. (*Id.* at 44:12-13.)

Singh does not dispute that his union representative was present at all conferences and hearings and admitted that Carrera once postponed a hearing to ensure that his union representative could be present. (*Id.* at 137:19-21; 109:2-12.) However, during his testimony, Singh expressed frustration with the District's investigatory and hearing process. Singh testified that he was not able to fully explain his side of the story at any of the investigative and higher level hearings. (*Id.* at

104:18-25; 105:18-19.) He also stated that he was explicitly instructed not to conduct his own investigation or question students and that this impacted his ability to defend himself. (*Id.* at 117:9-12.) For example, he testified that he was suspended for ten days after talking to a student during an investigation. (*Id.* at 74:1-4.)

Singh also filed charges on February 4, 2010 with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that he was threatened with termination based on his age, race, and national origin; however, he did not raise the charge that he was retaliated against. (*Id.* at 140:7-23; 141:24-142:7.) On April 9, 2010, the District sent Singh a termination letter,[2] which cites corporal punishment and disrespect toward school administrators as just cause for his termination. (*Id.* at 60:14-22; Pl. Hr. Ex. 7.) Singh has not received payment from the District since April 16, 2010. (*Id.* at 45:12-14.)

2. *Testimony of Debra Carrera*

Debra Carrera is the principal of Kensington CAPA. (Testimony of Debra Carrera ["Carrera"], Tr., at 155:9-11.) Carrera was the active principal when Singh arrived at Kensington CAPA, but took maternity leave from October 9, 2009 to December 8, 2009. (*Id.* at 155:17-18.) She has since resumed her position as principal of Kensington CAPA. (*Id.* at 155:11.)

Carrera testified that the notice Singh received prior to his investigatory hearings stated that he could not interview students or teachers. (*Id.* at 161:15-18.) However, she noted that he was only instructed to refrain from doing so while an investigation was pending. (*Id.* at 161:19.) Singh was

---

[2]The April 9, 2010 letter recommending termination will be treated as the final termination letter.

afforded the opportunity to interview the teachers and students involved in the incidents at the hearings, which he did. (*Id.* at 161:11-21.)

Carrera explained that it is proper procedure to avoid discussing corporal punishment issues with an accused teacher immediately following an incident or allegation. (*Id.* at 166:12-13.) It is also common practice to schedule an administrative conference. (*Id.* at 166:16-17.) She testified that she sought to protect Singh's rights and "[gave] him, not only an invitation to this conference, but [also] copies of all of the [witnesses'] statements, all of the enclosures, so that Mr. Singh [could] provide his statement, with his union representation present." (*Id.* at 166:17-21) Carrera stressed that she instructed Singh to talk with his union representative before making a statement to protect his interest. (*Id.* at 167:11.)

Carrera disputed Singh's claim that he repeatedly approached her about Kensington CAPA's ESOL program. She testified that Singh never verbally approached her about the program's alleged noncompliance with federal regulations. (*Id.* at 170:8.) She stated that, while he emailed her about the ESOL program, his allegations of noncompliance seemed to relate to the district office, and not just to Kensington CAPA. (*Id.* at 170:25-171:2; Pl. Hr. Ex. 8.)

Carrera provided credible testimony that she supported Singh in his efforts as an ESOL teacher and coordinator. (Carrera, Tr., at 172:12-14.) She noted that "[she] was excited to have him on board, and [was] looking forward to seeing the work that he was going to do, excited that we had someone who was ESOL and English certified, which was something we were looking for as a school." (*Id.* at 176:16-19.) Carrera showed her support by giving Singh the fourth period off to work on ESOL program records and other aspects of the program. (*Id.* at 171:22-24.) She also hired a bilingual counseling assistant to help Singh with his classes and with the ESOL program generally.

(*Id.* at 172:2-5.)  In addition to the bilingual counseling assistant, Carrera hired ESOL tutors.  (*Id.* at 172:6.)  Finally, after Singh recommended she do so, Carrera sent regular education teachers to get ESOL training so that ESOL students would receive further support in those classes.  (*Id.* at 172:7-12.)

3.     *Testimony of Jose LeBron*

Jose LeBron works as an interim principal for the District.  (Testimony of Jose LeBron ["LeBron"], Tr., at 186:12-14.)  The District placed him at Kensington CAPA from October 2009 to January 2010, while Carrera was on maternity leave, during which time he worked as Singh's principal.  (*Id.* at 186:19-23.)

LeBron testified that he discussed the ESOL program with Singh.  He stated that Singh informed him that the ESOL program was not in compliance "in terms of records, student levels, and the level of services to students. . ."  (*Id.* at 187:12-14.)  In response, LeBron adopted Singh's recommendation that Kensington CAPA needed another ESOL teacher and contacted the regional and central offices about obtaining one.  (*Id.* at 187:25-188:4.)  When Singh notified LeBron that he needed ESOL textbooks, LeBron contacted the central office to locate them and notified Singh that he could pick up the books after they became available.  (*Id.* at 188:20-24.)  LeBron testified that Singh raised concerns about the ESOL program with him "off and on" while LeBron worked at Kensington CAPA.  (*Id.* at 189:22-25.)  He also noted that Singh appeared to be comfortable discussing the ESOL program with him.  (*Id.* at 190:1-3.)

4.      *Testimony of Linda Brown*

Linda Brown is a labor relations assistant with the District.  (Testimony of Linda Brown ["Brown"], Tr., at 197:3-6.)  She has fifteen to sixteen years experience working in labor relations for both employers and unions.  (*Id.* at 197:7-12.)

Brown testified that teachers in the District are subject to the CBA, and she explained the typical disciplinary and grievance procedure as follows:

> If a principal or administrator receives a complaint or allegation of a violation of school district policy, then the principal or administrator is required to conduct an investigation to determine if the allegations are accurate or factual, and then the principal or administrator notifies the employee that by notice, that an allegation has been made against them.  The employee is given the time, date of the conference, as well as any documents that would be used in that particular conference... And they are advised that they are entitled to union representation.

(*Id.* at 199:13–25.)  Brown also testified that teachers are afforded <u>Weingarten</u> rights, discussed *infra*, which affords employees the right to have union representation at any disciplinary hearing. (*Id.* at 200:15-19.)  She confirmed Carrera's testimony that the District advises principals to avoid discussing allegations against teachers without a union representative present.  (*Id.* at 200:25-201:1.)

Brown further explained the normal progression of the grievance procedure following a complaint or allegation.  She testified that an investigatory hearing is held during which time the employee and union representative are allowed to question witnesses and bring their own witnesses. (*Id.* at 201:4-8.)  After this hearing, an administrator reviews the documents and, sometimes with the help of a labor relations assistant, decides whether a District policy has been violated.  (*Id.* at 201:11-15.)  If the administrator decides that a policy has been violated, the employee and his union representative are called to a second conference to discuss the administrator's conclusion and to

afford the employee the opportunity to submit any information that the employee thinks should be included in the record. (*Id.* at 201:19-24.) Following this conference, the District may have a second step conference where the regional superintendent is present. (*Id.* at 202:20-23.) At this conference, the employee is permitted to present additional testimony and to explain why the finding of the first administrator is incorrect. (*Id.* at 202:24-203:2.) After the second step conference, a recommendation is made to the School Reform Commission and, if the employee disagrees with that decision, he may file for arbitration through his union. (*Id.* at 203:6-8.)

After reviewing Defendants' Hearing Exhibits 4, 14-16, 24-36, 38, 60, 60-66, 70-79, 82, and 91, Brown testified that these documents related to Singh's multiple disciplinary conferences and were an accurate reflection of the events which took place. (*Id.* at 208:5; 209:13; 210:18.) She also testified that at these hearings, Singh was permitted to present witnesses and file grievances, in accordance with the District's typical procedure. (*Id.* at 210:22; 211:12.) During Brown's testimony, it was agreed that Singh has already filed for arbitration pursuant the CBA. (*Id.* at 213:14-16.)

5.    *Testimony of Arlene Ackerman*

Arlene Ackerman is the Superintendent of the School District of Philadelphia. (Testimony of Arlene Ackerman ["Ackerman"], Tr., at 24:7-9.) As Superintendent, Ackerman is the highest power within the District. (*Id.* at 24:16-19.) Ackerman's signature appears on the termination letter sent to Singh on April 9, 2010. (*Id.* at 27:10.) She signs a termination letter as the Secretary of the School Reform Commission. (*Id.* at 28:17-19.) Though Ackerman signed Singh's termination letter, she possesses no personal knowledge of the events giving rise to Singh's termination. (*Id.* at 27:8-22.) Instead, Ackerman signed the termination letter in reliance on findings of District

employees who were involved in the termination process. (*Id.* at 28:17-21). Ackerman presented credible testimony that her involvement in Plaintiff's termination strictly implicated her ministerial duties as Superintendent of the District, and at no point was Ackerman otherwise engaged in the decision to terminate Plaintiff.

## II.     LEGAL STANDARD

A party moving for a preliminary injunction under Federal Rule of Civil Procedure 65 must show: (1) the party has suffered irreparable harm; (2) the party has a reasonable likelihood of success on the merits; (3) the harm to the party outweighs the possible harm to other interested parties; and (4) granting relief is in the public interest. Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994) (citing Delaware River Port Auth. v. Transamerican Trailer Transp., Inc., 501 F.2d 919-20 (3d Cir. 1974)). A court will issue a preliminary injunction "[o]nly if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief. . ." Optician's Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990).

## III.    DISCUSSION

Based on the testimony elicited at the July 9, 2010 hearing, and the factors to be weighed before issuing a preliminary injunction, the Court finds that Singh is not entitled to injunctive relief. The Court will analyze each of the above factors seriatim.

### A.     Failure to Show Irreparable Harm

In order to secure preliminary injunction, Singh must demonstrate that he will suffer irreparable harm if Defendants' actions are permitted to continue and that his harm cannot be atoned by any remedy at law. Acierno, 40 F.3d at 655. Singh must also establish that the "potential harm

. . . cannot be redressed by a legal or an equitable remedy following a trial" but rather "the preliminary injunction must be the *only* way of protecting the [moving party] from harm." Campbell Soup Co. v. ConAgra Inc., 977 F.2d 86, 91 (3d Cir. 1992) (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989)).

Singh failed to present sufficient evidence for this Court to find that he suffered irreparable harm. Singh argues that he "has been illegally dismissed as [a] tenured teacher. . . and, at the age of 59, it is unlikely that he would be able to obtain other employment." (Pl.'s Memo. of Law In Support of Mot. Prelim. Inj. 1). While the Court is sympathetic to the challenges associated with loss of income, the Third Circuit has consistently held that mere economic injury does not rise to the level requiring injunctive relief. See e.g., Acierno, 40 F.3d at 653-55 (holding that purely economic injury, though sometimes difficult to calculate, does not amount to irreparable injury); Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 562 F.3d 553, 557 (3d Cir. 2009) (holding that plaintiff's economic injuries, which resulted from franchise fees, did not constitute irreparable harm). Since Singh has only asserted an economic injury, his loss of employment does not constitute irreparable harm.

The instant matter is similar to Roberts and Burden v. Van Buren Pub. Sch., 731 F.2d 523 (8th Cir. 1994), where the Eighth Circuit found that plaintiffs failed to demonstrate irreparable harm. There, plaintiffs were tenured teachers whose contracts were not renewed because each plaintiff had a history of "poor rapport" with other teachers, school administrators, and parents. Van Buren, 731 F.2d at 525 n.2. The court held that since plaintiffs' only injury was loss of employment, back pay and reinstatement represented a complete remedy. *Id*. at 526. Since these adequate remedies at law existed, plaintiffs were not entitled to preliminary injunction. *Id.* Likewise here, if Singh's claims

succeed, reinstatement at Kensington CAPA and money damages in the form of back pay will be sufficient to atone Singh's injuries.

Moreover, Singh is currently involved in the arbitration process pursuant to the CBA. (Brown, Tr., 213:14-16.) If Singh is successful in arbitration, he may be awarded money damages. Accordingly, there is an adequate remedy at law, removing Singh's injuries from the realm of irreparable harm.

B.    Failure to Show Reasonable Likelihood of Success on the Merits

In order for a preliminary injunction to issue, the moving party must also establish a reasonable likelihood of success on the merits of its underlying claim. BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 263 (3d Cir. 2000). Singh has failed to demonstrate that he is likely to prevail on the merits of his First Amendment retaliation, procedural due process[3] and breach of contractual obligation claims.

i.    *First Amendment Retaliation Claim*

To establish a First Amendment retaliation claim, a plaintiff must demonstrate that: (1) the activity in question is protected by the First Amendment and (2) the protected activity was a substantial factor in the alleged retaliatory action. Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005). To satisfy the first element of the retaliation claim – that the activity in question is protected by the First Amendment – a public employee must show that: (1) in speaking, the employee spoke as a citizen; (2) the statement involved a matter of public concern; and (3) the government employer did not have an adequate justification for treating the employee differently

---

[3]Though Singh's Complaint asserted both substantive and procedural due process claims, Singh withdrew the substantive due process claim at the July 9, 2010 hearing.

from any other member of the general public. <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006).

To satisfy the second element of the retaliation claim – that the protected activity was a substantial factor in the alleged retaliatory action – a public employee must show that: (1) the complained of acts are sufficient to give rise to a claim of First Amendment retaliation and (2) that the speech was a substantial factor in the alleged retaliatory action. <u>Smith v. Cent. Dauphin Sch. Dist.</u>, 355 Fed. Appx. 658, 668 (3d Cir. 2009). Singh has failed to demonstrate a likelihood of success on the merits of his First Amendment retaliation claim because he has not established either element.

<blockquote>
a.    First Element: The Activity in Question is Protected<br>
       by the First Amendment
</blockquote>

To establish the first element of the retaliation claim – the activity in question is protected by the First Amendment – the employee must demonstrate that he spoke as a citizen and not pursuant to his official duties.[4] The Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." <u>Garcetti</u>, 547 U.S. at 421. Moreover, the Third Circuit has noted that even if the employee does not speak pursuant to an explicit official duty, statements related to activities required to complete that employee's job may not be protected by the First Amendment. <u>Foraker v. Chaffinch</u>, 501 F.3d 231,

---

[4]In deciding whether an employee speaks as a citizen or pursuant to his official capacity, a court must weigh the interests of a citizen in protecting his First Amendment rights and the interests of the state to run its affairs efficiently. <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563, 568 (1968). While an individual does not sacrifice all his rights upon accepting public employment, the government must be afforded the right to pursue its own goals. Weighing these interests requires a serious investigation into the facts of each case, which may sometimes prove difficult. <u>Id.</u> at 569.

240 (3d Cir. 2007) (citing <u>William v. Dallas Indep. Sch. Dist</u>, 480 F.3d 689 (5th Cir. 2007)). Finally, speaking about activities that are related to "special knowledge and experience acquired through [the employee's] job" does not constitute acting as a citizen. <u>Cindrich v. Fisher</u>, 341 Fed. Appx. 780, 788 (3d Cir. 2009).

Here, Singh cannot establish that he spoke as a citizen when he complained to Defendants about the deficiencies in the ESOL program for noncompliance with the Y.S. Stipulation. Singh argues that he emailed and conversed with various school administrators, including Carrera and LeBron, about the Y.S. Stipulation and the manner in which Kensington CAPA's ESOL program violated the Y.S. Stipulation, including failure to keep adequate records and insufficient communications with ESOL students' parents. He contends that since the Y.S. Stipulation pertains to a legal matter of public record in a court proceeding, it is beyond the scope of his duties as a teacher. Therefore, his emails and discussions about the Y.S. Stipulation are not merely internal memoranda and conversations regarding work issues. Instead, he contends that he acted as a citizen when he confronted Defendants about violations of the Y.S. Stipulation.

The court finds Singh's argument unpersuasive. The Supreme Court has consistently held that matters pursuant to official job duties are not protected by the First Amendment. Moreover, the Third Circuit has broadened Supreme Court precedent by noting that activities required to complete an employee's duties also may not be protected by the First Amendment. <u>Garcetti</u>, 547 U.S. at 421 (finding that plaintiff did not speak as a citizen when he wrote a memorandum since writing memoranda was necessary to complete his duties as a calendar deputy); <u>Foraker</u>, 501 F.3d at 240 (finding that plaintiffs did not speak as citizens when they complained about safety in the firing range where they worked because ensuring safety in that range related to their jobs as instructors).

Singh's activities are not protected by the First Amendment because they were made pursuant to his duties as the ESOL program coordinator. Soon after commencing his employment at Kensington CAPA, Singh was asked to work as the ESOL program coordinator and was given the fourth period off to dedicate his time to this endeavor. As coordinator, he exchanged numerous emails with LeBron and Carrera about the ESOL program, and they held discussions in passing. Singh worked to improve the Kensington CAPA ESOL program and to ensure that it was in compliance with federal regulations. Accordingly, his emails and communications about the ESOL program, especially its noncompliance with the Y.S. Stipulation, were made in relation to his duties as a coordinator. As such, Singh's activities were not made as a citizen and, therefore, are not protected by the First Amendment.

Moreover, Singh's complaints about the ESOL program are not protected by the First Amendment for the additional reason that they were made pursuant his duties as a teacher.[5] Singh was required to teach according to the ELL Handbook. Singh testified that, according to the ELL Handbook, he was to support the "implementation of the ESOL program," "utilize data for decision-making," and "provide effective and appropriate formative assessments." (Singh, Tr., 89:16-25; Pl.

---

[5] In Garcetti, the Supreme Court examined, but did not answer, whether the official duty analysis "would apply in the same manner to a case involving speech related to scholarship or teaching" because "[t]here is some argument that expression related to academic scholarship or classroom instruction implicates additional constitutional interests that are not fully accounted for by. . . customary employee-speech jurisprudence." Garcetti, 547 U.S. at 425. The Third Circuit recently addressed this issue in Gorum v. Sessoms, 561 F.3d 179 (3d Cir. 2009). There, the plaintiff, a tenured professor, claimed that he was terminated after advocating on a student's behalf at a disciplinary hearing. The Third Circuit stated that it need not decide the question left open by Garcetti because the plaintiff was not "involv[ed] in speech relating to scholarship or teaching." This Court also refrains from addressing the Garcetti issue because Singh's complaints about Kensington CAPA's ESOL program are not sufficiently related to scholarship or teaching; rather, they focus on federal regulations and record keeping.

Hr. Ex. 2)  Singh's comments to Defendants about the Kensington CAPA ESOL program all relate to his complying with the ELL Handbook requirements.  Therefore, even if Singh was not required to discuss the Y.S. Stipulation specifically, his complaints still related to his duties as a teacher because he was fulfilling his responsibilities as required by the ELL Handbook.  Accordingly, he acted pursuant to his official duties as an employee of the District.

Finally, to satisfy the first element of the retaliation claim – the activity in question is protected by the First Amendment – plaintiff must show that the government employer did not have an adequate justification for treating the employee differently from any other member of the general public.  The Supreme Court has commented that:

> This consideration reflects the importance of the relationship between the speaker's expressions and employment.  A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations.

Garcetti, 547 U.S. at 418.

Singh has not presented any evidence that demonstrates that Defendants treated him differently than any other member of the public because he cannot show that they tried to restrict his activities.  First, he testified that LeBron never asked him to stop discussing the ESOL program with LeBron or others.  Moreover, LeBron adopted several of Singh's suggestions, including Singh's request for an additional ESOL teacher.  Similarly, Carrera hired a bilingual counseling assistant and ESOL tutors to support Singh.  She sent regular education teachers to obtain ESOL training to further enhance ESOL students' learning.  She provided credible testimony that she was excited to have Singh at Kensington CAPA and anticipated positive changes in the ESOL program when he

began his employment. It is clear that LeBron and Carrera encouraged Singh to actively communicate about the ESOL program and regularly adopted his suggestions.

Moreover, Defendants did not lack adequate justification for Singh's dismissal. On October 26, 2009, he placed his hands on a student's head. On December 17, 2009, he hit a student on the head and raised his voice to a Kensington CAPA administrator. On January 29, 2010, he grabbed a student's arm, leaving scratches and red marks. Since Singh cannot demonstrate that Defendants attempted to silence his complaints about the ESOL program by recommending his dismissal as an employee of the District, he cannot show that he was treated differently than any other member of the public. Defendants have shown that they had adequate justification for his removal.

b.      Second Element: The Protected Activity was a
         Substantial Factor in the Alleged Retaliatory Action

To prove the second element of the retaliation claim – that the protected activity was a substantial factor in the alleged retaliatory action – plaintiff must show that the alleged retaliatory act is "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." Clayton v. City of Atlantic City, No. 09-3045, 2010 WL 2674526, *6 (D.N.J. June 30, 2010) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)). This standard is low, with a plaintiff needing only to prove the acts were more than *de minimis*. McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006); O'Connor v. City of Newark, 440 F.3d 125, 127-28 (3d Cir. 2006). For purposes of this Motion, Defendants concede that the alleged acts are sufficient to satisfy this element of the analysis. (Def.'s Resp. to Pl.'s Mot. Prelim. Inj. 14 n.6). Accordingly, this Court will concentrate on the next factor of the First Amendment retaliation cause of action.

To prevail on a retaliation claim, the plaintiff must also prove a causal connection between the First Amendment speech and the alleged retaliation. To do so, a plaintiff must prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. Smith, 355 Fed. Appx. at 668.

Singh cannot prove causation under the first method. Temporal proximity without further evidence of retaliation only establishes causation when it is "unusually suggestive." While there is no bright line test to prove "unusually suggestive" temporal proximity, the Third Circuit has held that the lapse between the protected activity and the alleged retaliatory act must be measured in days, not weeks or months. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000); Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003).

Here, Singh first complained about the deficiencies in Kensington CAPA's ESOL program in September 2009. However, the District did not send the termination letter until April 9, 2010. Even if Singh alleges that Defendants' first retaliatory action was Singh's suspension, that incident did not occur until December 2009. The range of three to seven months is not close enough to be unusually suggestive. Accordingly, Singh cannot prove causation solely through temporal proximity.

Furthermore, Singh also cannot prove causation under the second method, a pattern of antagonism coupled with timing. When considering whether a pattern exists in retaliation cases, a court uses a "timing plus" standard in which a court considers proof of timing, actual antagonistic conduct, animus, and other evidence from the record as a whole. Farrell, 206 F.3d at 280-81. During this fact intensive examination, a court views the evidence in its entirety, recalling that a pattern may not be developed by just one piece of evidence. Andrews v. City of Phila., 895 F.2d

1469, 1484 (3d Cir. 1990).  Though Singh alleges that Carrera "engaged in a campaign to have Mr. Singh, disciplined, suspended and fired," Singh does not allege sufficient facts to develop a pattern which proves that this campaign actually occurred.  Rather, his conclusory statements are insufficient to prove a pattern of antagonism coupled with timing.  (Pl. Compl. ¶ 4.)  As noted above, the Court has found that Carrera and LeBron encouraged Singh by hiring a bilingual counseling assistant and ESOL tutors, giving him a period off each school day to work on his assignments as the ESOL program coordinator, locating additional ESOL textbooks for him, and sending regular education teachers to receive ESOL training.  This evidence totally undermines his accusations of an organized campaign to have him removed from employment.

The instant matter is similar to Pollock v. City of Phila., 2008 U.S. Dist. LEXIS 60764 (E.D. Pa. Aug. 8, 2008), where the court did not find a causal connection based on a pattern of antagonism coupled with timing.  In Pollock, testimony was presented showing a tense work relationship between plaintiff and defendant due to complaints by plaintiff that a co-defendant's maltreatment of plaintiff stemmed from racial prejudice.  Id. at *44.  After receiving the complaints, defendant took measures to ease the co-defendant's harassment, including informing plaintiff where he could file a formal complaint and sending plaintiff to the hospital after plaintiff attempted suicide.  Id. at **44-47.  In that case, the court found that defendant disproved any pattern of antagonism by assisting plaintiff on several occasions.  Likewise here, Carrera and LeBron consistently took measures which illustrated their support of Singh, disproving a pattern of antagonism.  Accordingly, Singh cannot prove causation based on a pattern of antagonism coupled with timing.

Consequently, Plaintiff has failed to prove either element of his retaliation claim, much less a likelihood to prevail on the merits at trial.

ii.    *Due Process Claim*

The state is required to provide certain procedural safeguards when there is a risk of deprivation of a person's life, liberty or property interests.  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).  In Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985), the Supreme Court explained those safeguards.  The state must provide public employees with pre-termination notice of the charges against them and an opportunity to respond; however, a pre-termination hearing may be "something less" than a full evidentiary hearing.  *Id.* at 545.  Specifically, "[a] tenured employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence and an opportunity to present his side of the story."  *Id.* at 546 (citing Arnett v. Kennedy, 546 U.S. 134 (1974)).

Here, Singh failed to demonstrate that he was not afforded the procedural protections.  First, he received notice of the charges against him.  After each incident involving improper touching of students, Carrera and Defendant Gregory Shannon provided him with notice that an investigatory conference or second step hearing would be held.  (Def.'s Hr. Exs. 61-64, 68, 70, 74, 76, 86).  Moreover, as Carrera testified, some of these notices also included witnesses' statements for Singh's review, allowing Singh to better prepare himself for conferences and hearings.

The District also provided Singh with more than six investigatory and second step conferences to review the District's evidence and allow Singh to present his defense.  At each investigatory and second step conference, Singh was permitted to ask witnesses questions and present his version of each incident.  Since the Supreme Court has held that a pre-termination hearing may be "something less" than a full evidentiary hearing and Defendants have established that they provided Singh with notice, an explanation of their evidence and an opportunity to respond,

Singh has failed to show that Defendants deprived him of procedural due process.

Singh's main procedural due process argument is that he was not provided ample opportunity to investigate or question witnesses prior to his hearings because Carrera instructed him to refrain from doing so. He also alleges that Brown did not permit him to ask all of his questions at his hearings. Singh's inability to communicate with witnesses prior to his investigatory hearing and dissatisfaction with the number of questions he was permitted to ask at his hearings, however, does not rise to the level of a violation of due process. Rather, he and his union representative were permitted to question witnesses during the hearing and present a defense, which affords Singh the rights to which he is entitled.

Singh further argues that his due process rights were violated because Carrera did not ask for his side of the story immediately following the incidents which led to his termination. However, Carrera and Brown testified that it is common practice to wait until a teacher's union representative is present to discuss matters that may lead to disciplinary action. After review of the Supreme Court's ruling in National Labor Relations Board v. J. Weingarten, Inc., 420 U.S. 251 (1975), this Court is persuaded that Carrera and Brown did not err in delaying to hear Singh's side of the story. In Weingarten, the Supreme Court held that the employer's denial of an employee's request for union representation at an investigatory interview constituted an unfair labor practice, noting that its ruling remained in line with common industry practice. *Id*. at 260-67. Similarly, here, this Court will not penalize Defendants for erring on the side of caution by ensuring that Singh have his union representative present before he was questioned by any Defendant about incidents that could lead to disciplinary action.

There is another reason why Singh's due process argument is not persuasive. Singh has not exhausted his state remedies. The Supreme Court in <u>Zinermon v. Burch</u>, 494 U.S. 113 (1990), stated that due process is "not complete unless and until the State fails to provide due process." *Id.* at 126. Here, Singh is currently involved in arbitration regarding his termination pursuant to the CBA, which was negotiated between Singh's union and the District and is a binding contract. Singh has chosen to file for arbitration under the CBA and must exhaust this administrative remedy before his claim becomes ripe for adjudication in a federal court. <u>See</u> <u>McKnight v. Sch. Dist. of Phila.</u>, 171 F. Supp. 2d 446 (E.D. Pa. 2001) (finding that plaintiff's breach of contract claim failed because plaintiff did not exhaust his administrative remedies through arbitration and appeal to the National Labor Relations Board before filing his federal complaint). Therefore, Singh's due process claim is precluded until he exhausts his state remedies.

Accordingly, this Court finds that Singh is unlikely to succeed on the merits of his due process claim.

### iii. *Breach of Contractual Obligations Claim*

The Public Employee Relations Act, 43 P.S. §§ 1101.01-1101.2301, states that arbitration is *mandatory* for all "disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement." 43 P.S. § 1101.903. Singh and Defendants stipulate that Singh is a public tenured employee, as defined by 24 P.S. § 11-1101(1) of the Public School Code of 1949. Singh is also subject to the CBA as a member of the Philadelphia Federation of Teachers. (Singh, Tr., at 136:23-137:10; Pl. Comp. Ex. F.) Since Singh has not alleged that his breach of contractual obligations claim arises from any other contract, this Court assumes that those claims arise from the CBA. Therefore, Singh's breach of contractual obligations claim must be addressed in arbitration.

23

Singh admits that he has already commenced the arbitration process through his union.[6] Accordingly, Singh's breach of contractual obligation claim is unlikely to succeed on the merits.

  C.  <u>Harm to Plaintiff Does Not Outweigh the Possible Harm to Other Interested Parties</u>

  Singh failed to demonstrate that the harm he has suffered by his dismissal from employment outweighs the possible harm to other interested parties. Singh's harm consists of loss of employment and difficulty finding employment elsewhere. However, this harm has already occurred and there is a remedy at law. Conversely, the District has presented sufficient evidence to demonstrate that Singh disregarded Defendants' instructions that he was not to use corporal punishment on his students. He also disrespected Kensington CAPA administrators. The harm to Singh is outweighed by the risk of placing a teacher with violations of school policy back in Kensington CAPA's learning environment. Accordingly, Singh failed to establish that his harm is outweighed by the possible harm to other interested parties.

  D.  <u>Granting Relief is in the Public Interest</u>

  Finally, Singh failed to demonstrate that issuing a preliminary injunction is in the public interest. Beyond Singh's alleged difficulty in finding other employment, he has not presented evidence showing that his students have been gravely disserviced by his termination or that the Kensington CAPA ESOL program is failing without him. In fact, the public interest is better served by preserving confidence in the District's well established termination process, which comports with

---

  [6]Even if Singh alleged that his claim does not "[arise] out of the interpretation of the provisions of a collective bargaining agreement[,]" he must still ask an arbitrator to decide whether his claims arise out of the CBA before addressing this Court. <u>Davis v. Chester Upland Sch. Dist.</u>, 567 Pa. 157, 161 (Pa. 2001) (holding that the plaintiffs must demonstrate that an arbitrator found that their claim did not arise out of the provisions of the collective bargaining agreement before the trial court had jurisdiction).

procedural due process, discussed *supra*. Because the Court has found that Singh's First Amendment rights have not been violated, it is within the public interest to refrain from questioning the District's administrative sovereignty in its termination process. Accordingly, Singh failed to establish that granting relief is in the public interest.

V.     **CONCLUSION**

For the foregoing reasons, this Court will deny Plaintiff's Petition for Permanent and/or Preliminary Injunction. An appropriate Order follows.